Argued and submitted March 26, affirmed June 18, 2008

DEPARTMENT OF LAND CONSERVATION
AND DEVELOPMENT,
*Respondent,*

*v.*

JEFFERSON COUNTY,
*Respondent,*

*and*

Jerry BURK,
*Petitioner.*

Land Use Board of Appeals
2007177; A138022

188 P3d 313

Edward P. Fitch argued the cause for petitioner. With him on the brief was Bryant, Emerson & Fitch, LLP.

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for respondent Department of Land Conservation and Development. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent Jefferson County.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this land use case, a property owner obtained Ballot Measure 37 (2004) "waivers" of applicable state and local land use regulations that had restricted the development of his property. ORS 197.352 (2005). He then filed an application with Jefferson County to develop the property. While the application was pending, he died. Petitioner was appointed the personal representative of the estate and pursued the Jefferson County development application, which the county granted. The Department of Land Conservation and Development (DLCD) then appealed the application to the Land Use Board of Appeals (LUBA), arguing that petitioner cannot claim the benefit of the Measure 37 waivers, because he was not the owner of the property at the time the waivers were obtained. LUBA agreed, and petitioner seeks review of that decision. We affirm.

The relevant facts are undisputed. William Burk acquired a 160-acre parcel of property in 1947. The property has 80 acres of irrigation rights and has long been used for hay production and other agricultural uses. In the years following the purchase of the land, various restrictions on its use were adopted, including local zoning for exclusive farm use and state laws that restrict the uses of land so zoned. *See, e.g.,* ORS 215.203(1) (land zoned exclusively for farm use must be used exclusively for farm use, subject to statutory exceptions); ORS 215.780(1)(a) (imposing minimum lot size of 80 acres for land zoned for exclusive farm use, subject to certain exceptions).

In 2004, the voters enacted Measure 37, which permitted an "owner" of property that is subject to land use restrictions that went into effect after the time the owner purchased the property to bring a claim either for the diminution in value resulting from those land use restrictions or for a waiver of the restrictions in lieu of compensation. ORS 197.352(1), (8) (2005). Burk filed Measure 37 claims for compensation with both the county and the state, asserting that the land use regulations enacted since 1947 prevented him from subdividing the property. The county and the state approved his claims and elected, in lieu of paying compensation, to "waive" the offending land use regulations.

Burk then filed an application with the county for a residential subdivision and planned unit development (PUD). The application included two tentative plans, one that proposed a 100-lot PUD and the other a 60-lot PUD. On July 1, 2007, while the application was pending, Burk died. Petitioner was appointed the personal representative of Burk's estate. In that capacity, he pursued the development application with the county. County planning staff recommended denial of the application on the ground that the Measure 37 waivers were personal to Burk and were not transferable to Burk's estate or to petitioner. DLCD weighed in on the application as well, asserting that petitioner cannot claim the benefit of Burk's Measure 37 waivers. The board of county commissioners, however, issued a final decision approving the 60-lot PUD proposal.

DLCD appealed the county's decision to LUBA, arguing that the county erred in approving the development application because development was foreclosed by a number of land use regulations. DLCD argued that, although Burk had obtained waivers of those regulations, the waivers were personal to him and did not survive his death. Petitioner intervened. He agreed that Measure 37 waivers are not transferable. He nevertheless argued that he was entitled to the full benefit of Burk's waivers by virtue of ORS 215.427(3)(a), commonly referred to as a "goal-post statute." Petitioner reasoned that, under that statute, all approval and denial criteria are frozen as of the time of the application. Thus, he contended, when Burk submitted his development application to the county, that "vested" a right to have the application decided under the approval and denial criteria that existed at that time, including the waiver of otherwise applicable land use regulations. DLCD rejoined that nothing in the statute remotely supports the effect that petitioner claims from it. According to DLCD, all the statute requires is that the state legislature and the local government not alter the laws applicable to the property; it does not create a separate, transferable species of property rights.

LUBA reversed the decision of the county. LUBA reasoned that Measure 37 and the goal-post statute stood in irreconcilable conflict. On the one hand, LUBA held, Measure 37 rights are not transferable, while, on the other hand,

the goal-post statute creates vested rights that are transferable. Under the circumstances, LUBA concluded, Measure 37 must control, because it is the more particular and the later enacted statute.

Petitioner now seeks review of LUBA's decision, again arguing that, when Burk submitted his development application with the county, ORS 215.427(3)(a) effectively created a vested right in the applicability of existing approval and denial criteria, including Burk's Measure 37 waivers. When Burk died, petitioner contends, those waivers were transferred to him, not by virtue of Measure 37—which he concedes does not itself create transferable rights—but by virtue of the goal-post statute.

DLCD responds that LUBA correctly reversed the county's decision, but disputes that Measure 37 and ORS 215.427(3)(a) conflict in this case. According to DLCD, the goal-post statute protects against changes in the applicable law that occur after a development application is filed. In this case, DLCD argues, there has been no change in applicable *law*, only a change in *facts*—that is, Burk's death and the expiration of his Measure 37 waivers. DLCD contends that all of the land use regulations applied to the property when Burk filed his application; his Measure 37 waivers simply prevented those regulations from applying to *him*. In the event that this court determines that the statutes conflict, DLCD urges us to conclude, as did LUBA, that Measure 37 controls. For the reasons that follow, we agree with DLCD that there is no conflict between Measure 37 and the goal-post statute in the first place.

The parties' dispute presents a question of statutory construction, which we resolve by application of the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We are to ascertain, if possible, the meaning of statutes that was intended by the legislature or the people who enacted them in the exercise of their initiative powers. *Id*. at 610. In undertaking such an inquiry, we examine the statutory text in context and, if necessary, legislative history and canons of statutory construction. *Id*. at 610-12. In examining the text, we are constrained "not to insert what has been omitted, or to omit what has been inserted." ORS 174.010.

Before turning to the resolution of the parties' dispute, it is important to emphasize the narrowness of the issue before us. Neither party to this case asserts that Measure 37 itself permitted the transfer of a waiver from Burk to petitioner. Both parties agree that, in the absence of some other applicable source of law, such a waiver would dissolve upon the death of the person who originally obtained it, given that the statute provides that only the owner who "acquired the property" may obtain a waiver of land use regulations that went into effect after the acquisition. ORS 197.352(8) (2005). The sole issue in this case is whether ORS 215.427(3)(a) is such a source of law that, independent of Measure 37, creates a vested, transferable right in the continued viability of a waiver, even after the death of the person who originally obtained it. With that narrow focus in mind, we turn to the question whether the legislature intended ORS 215.427(3)(a) to have that effect.

■    ORS 215.427(3)(a) provides, in part:

"If the application was complete when first submitted or the applicant submits additional information, as described in subsection (2) of this section, within 180 days of the date the application was first submitted * * *, *approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted.*"

(Emphasis added.) By its terms, the statute ensures that an applicant who has otherwise fulfilled the statutory requirements will be subject to the "standards and criteria that were applicable at the time the application was first submitted." *See Davenport v. City of Tigard*, 121 Or App 135, 141, 854 P2d 483 (1993) (concluding that the role of those terms "is to assure both proponents and opponents of an application that the substantive factors that are actually applied and that have a meaningful impact on the decision permitting or denying an application will remain constant throughout the proceedings"). Thus, the upshot of the legislation—and the source of its moniker, the "goal-post statute"—is that, once an application has been completed in a timely fashion, state and local governments may not enact new legislation that alters the criteria by which the application may be approved or denied. *Sunburst II Homeowners Assn. v. City of West*

*Linn*, 101 Or App 458, 461, 790 P2d 1213, *rev den*, 310 Or 243 (1990) (stating that the effect of the goal-post statute is that "persons who file applications before more restrictive legislation is adopted are entitled to have the earlier law applied to their applications").

It is important to emphasize that the statute requires that the applicable approval or denial criteria not change with respect *to the application as filed*, or as supplemented within a limited period of time. If, after that time, the substance of an application changes in a material way, the goal-post statute does not apply. That only makes sense. If, for example, a property owner filed an application for a PUD that was consistent with existing minimum lot size restrictions, but the owner later amended the application to include smaller lots than existing laws require, the goal-post statute would not prevent the application of the minimum lot size restrictions. That is because a change in the *facts* altered the nature of the application in a way that changed the manner in which existing law applies to it.

■    In this case, once Burk completed his application, no new state or local land use legislation was enacted—at least none that anyone seeks to have applied to the application. What occurred was a change in the underlying facts pertaining to the application, facts that caused *existing* law to have a different effect. When Burk filed the initial application, he— as the owner who "acquired the property"—possessed Measure 37 waivers of land use regulations that otherwise would have restricted the use of his property. His death while the application was pending altered the factual underpinning of the application in a significant way. At that point, the applicant was no longer Burk, but petitioner. And petitioner—who was not the owner who "acquired the property"—did not possess Measure 37 waivers. That fact caused existing laws to operate differently than they would have had Burk remained the applicant. ORS 215.427(3)(a) did not apply to prevent the operation of those existing laws on *petitioner's* development application.

Petitioner insists that, once Burk completed the development application, Burk's Measure 37 waivers, in effect, "vested." Once that vesting occurred, he argues, the

waivers became transferable and inheritable like any other vested property right. Petitioner cites nothing in the wording of ORS 215.427(3)(a) in support of that contention, however. Nor does he cite any case law in support of it. Nor does he cite any provision of the Jefferson County Zoning Ordinance that might support it. He does cite a comment in a state bar continuing legal education handbook that states that, once a property owner completes a development application, that applicant has "a form of vested right" by virtue of the application, "assuming, of course, the standards in effect at the time of application can be met." *Land Use* § 12.22 (OSB CLE 1994). The problem with petitioner's reliance on that comment is that it amounts to question-begging, in that it relies on a premise that is the very matter in contention, namely that Burk's Measure 37 waivers were part of the standards of approval or denial in the first place.

There is, in short, no support for petitioner's contention that, when Burk filed his development application, ORS 215.427(3)(a) "vested" Burk's Measure 37 waivers so that, when he died, they passed to his estate. We therefore agree with LUBA that the goal-post statute did not operate to preserve Burk's waivers, although we arrive at that conclusion for a different reason than did LUBA.

Affirmed.