PETE'S MOUNTAIN HOMEOWNERS ASSOCIATION,
Jerry L. Schlesser,
and Judith Lee Messner,
*Respondents,*

*v.*

CLACKAMAS COUNTY,
*Respondent below,*

*and*

Donald BOWERMAN,
W. Leigh Campbell,
and Ceille Campbell,
*Petitioners.*

Land Use Board of Appeals
2008065; A140272

204 P3d 802

Daniel Kearns argued the cause for petitioners. With him on the brief was Reeve Kearns, PC.

Jeffrey L. Kleinman argued the cause and filed the brief for respondents.

Edward P. Fitch and Bryant, Emerson & Fitch, LLP, filed the brief *amicus curiae* for John Arnett, Frank Rencher, Shelley Hudspeth, David Hurtley, Laura Harry, Marie Harry, Dale Landrus, Ernest Hannan, Arletta Hannan, and Gordon Shown.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, filed the brief *amicus curiae* for Department of Land Conservation and Development.

Edward H. Trompke and Jordan Schrader Ramis PC filed the brief *amicus curiae* for Charles Hoff.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this land use case, petitioners obtained waivers of applicable land use laws under Ballot Measure 37 (2004). With those waivers in hand, they then applied with the county to construct a subdivision in an area zoned for agricultural and forest use. While their application was pending, the voters enacted Ballot Measure 49 (2007), which essentially supersedes Measure 37 and renders Measure 37 waivers without legal effect. The question in this case is the effect of the enactment of Measure 49 on petitioners' application. Petitioners argue that ORS 215.427(3)(a), commonly known as the "goal-post statute," statutorily guarantees that, once they filed their application, the standards and criteria that apply to that application—including the Measure 37 waivers—cannot be changed. The county agreed and approved their application. LUBA reversed, concluding that, because Measure 37 itself was not a standard or criterion that applies to petitioners' application, the goal-post statute simply did not apply; thus, nothing prevented Measure 49 from taking effect as to their application. Petitioners seek judicial review, arguing that LUBA erred in construing the goal-post statute.

We conclude that LUBA did err in construing the goal-post statute. We also conclude, however, that the error does not alter the outcome of this case. In our view, the goal-post statute encompasses Measure 37 waivers. Measure 49, however, still has superseding effect, rendering the goal-post statute inoperable as to applications based on Measure 37 waivers. We therefore affirm LUBA's disposition.

The relevant facts are few and undisputed. Petitioners own a 69-acre parcel of property that they have denominated Tumwater at Pete's Mountain. They acquired the property in 1969. At the time they acquired the property, it was zoned for "general use." In 1979, the property was rezoned to "transitional timber," and, in 1994, it was rezoned again, to "agricultural forest." Those restrictions include a minimum lot size of 80 acres for lot divisions.

In 2004, the voters enacted Measure 37, which permitted an owner of property that is subject to land use restrictions that went into effect after the owner purchased the property to bring a claim either for the diminution in

value resulting from those restrictions or for a waiver of those restrictions in lieu of compensation. ORS 197.352 (2005). Petitioners then filed such a Measure 37 claim with Clackamas County and with the Department of Land Conservation and Development (DLCD). Petitioners alleged that they desire to create one-acre parcels for single-family residences, but that their development plans are precluded by existing zoning restrictions. They alleged a diminution in value in excess of $12 million. Both the county and DLCD elected to grant waivers in lieu of compensation.

On January 19, 2007, petitioners submitted an application and supporting documentation to the county for a 41-lot residential subdivision on the property for which they had obtained the Measure 37 waivers. The county declared the application complete that same day. Five months later, a county hearings officer approved the subdivision. The decision was appealed to LUBA, which remanded for reasons unrelated to the issues before us in this case.

In November 2007, the voters enacted Measure 49, and, on December 6, 2007, the measure took effect. As we explain in greater detail below, Measure 49 supersedes Measure 37 and replaces the remedies formerly provided by Measure 37. Or Laws 2007, ch 424, § 5.

Opponents of petitioners' proposed development objected to the application on the ground that Measure 49 had the effect of invalidating petitioners' Measure 37 waivers, thereby triggering the 80-acre minimum lot size restriction for the property. A county hearings officer concluded that the enactment of Measure 49 did not preclude petitioners from going forward with their application. The opponents appealed to LUBA.

In the meantime, we issued an opinion in *DLCD v. Jefferson County*, 220 Or App 518, 188 P3d 313, *rev den*, 345 Or 417 (2008) (*Burk*). In that case, a property owner obtained Measure 37 waivers and filed an application with Jefferson County to develop his property. *Id.* at 520-21. While the application was pending, however, the owner passed away. When the personal representative of the owner's estate pursued the application, opponents argued that the application must be denied because the Measure 37 waivers were personal to the owner at the time the waivers were obtained and

did not survive the owner's death. The personal representative responded that the goal-post statute had the effect of transferring to the personal representative the right to continue the application process. *Id.* at 521. LUBA concluded that the goal-post statute did not apply to Measure 37 waivers. *Id.* at 521-22. On judicial review, we expressly did not reach that question. We framed the issue more narrowly; in fact, we cautioned that "it is important to emphasize the narrowness of the issue before us," namely, the question whether the goal-post statute had the effect of transferring the Measure 37 waivers to the owner's estate upon his death. *Id.* at 522, 523. We answered the question in the negative, explaining that the goal-post statute prohibits a change in applicable approval or denial criteria as to the particular application filed. *Id.* at 523-24. In that case, we noted, the substance of the application had changed in a material way upon the death of the applicant. *Id.* at 524. As a result, we concluded, the goal-post statute did not apply. *Id.* at 524-25.

In this case, LUBA reversed the decision of the county hearings officer and rejected the contention that, under the goal-post statute, petitioners' Measure 37 waivers were part of the standards and criteria that became fixed at the time that their application was deemed complete. LUBA reasoned that the goal-post statute applies only to "standards and criteria" for decision on the application, and Measure 37 waivers do not themselves qualify as such standards and criteria. LUBA claimed support for that conclusion from our opinion in *Burk.* According to LUBA, "[w]e understand the Court of Appeals to have concluded that Measure 37 waivers are not part of the standards for approval or denial that become fixed under the * * * goal-post statute." In LUBA's view, "Measure 37 waivers authorize a partial *avoidance of* or *alternative to* the fixed goal-post for some property owners; Measure 37 waivers are not *part of* the fixed goal-post." (Emphasis in original.) As a result, LUBA concluded, petitioners are subject to Measure 49, which has the effect of rendering Measure 37 waivers without legal effect.

On review, petitioners contend that LUBA misread our opinion in *Burk* and in concluding that Measure 37 waivers are not part of the standards and criteria that are subject to the goal-post statute. Petitioners contend that we explicitly limited our holding in *Burk* to the fact that the property

owner in that case died during the pendency of the application, which had the effect of altering the application itself and removing it from the protection of the goal-post statute. Respondents, the opponents of petitioners' application, contend that LUBA correctly understood our opinion in *Burk* and insist that "[t]here is nothing in the cited language to suggest that [the] holding is confined to instances in which the Measure 37 claimant has died."

We may quickly dispose of the question whether our decision in *Burk* is controlling. In a word (actually, in three words): It is not. In fact, we are hard pressed to understand the basis for respondents' contention that there is nothing in the language of our decision in that case that limits its holding. As we have noted, we began by cautioning that "it is important to emphasize the narrowness of the issue before us," followed by our explanation that the fact that the property owner died while the application was pending was the sole basis for our holding. *Burk*, 220 Or App at 523, 524-25. And we expressly stated that we did not reach the rationale on which LUBA had relied. *Id.* at 525.

What remains is a question of first impression, namely, whether the goal-post statute encompasses Measure 37 waivers. That is a matter of statutory construction, resolved by the application of familiar principles that require us to examine the text of the statute in context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Among the familiar principles of statutory construction that are pertinent to this case is the rule that, when the Supreme Court construes a statute, that construction becomes part of the statute itself. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) ("When this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment."); *Liberty Northwest Ins. Corp., Inc. v. Watkins*, 224 Or App 599, 607, 198 P3d 960 (2008) (prior Supreme Court interpretation "is considered to be part of the text of the statute itself").

ORS 215.427(3)(a), the so-called goal-post statute, provides that, once an application for a permit or zone change

is complete, "approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted." The question is whether Measure 37 waivers are themselves "standards and criteria" within the meaning of the statute. That requires an examination of the precise nature of Measure 37 waivers.

Measure 37 provided that the state or a local government that has adopted a land use regulation that restricts the use of property must pay "just compensation" to an owner of such property if the restriction reduces the fair market value of the property. ORS 197.352(1) (2005). In lieu of paying just compensation, the state or a local government may elect simply not to apply the land use regulation:

> "Notwithstanding any other state statute * * *, in lieu of payment of just compensation under this section, the governing body responsible for enacting the land use regulation may modify, remove, or not to apply the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property."

ORS 197.352(8) (2005). The word "waiver" actually does not appear in Measure 37. It is a shorthand reference to the decision to "modify, remove, or not to apply" the regulation that diminishes the value of the owner's property. *See Frank v. DLCD*, 217 Or App 498, 500, 176 P3d 411, *rev den*, 345 Or 175 (2008) ("A choice to not apply a post-acquisition land use restriction is popularly referred to as a 'Measure 37 waiver.' ").

In *MacPherson v. DAS*, 340 Or 117, 132-33, 130 P3d 308 (2006), the Oregon Supreme Court explained that the effect of a Measure 37 waiver—that is, a decision to "modify, remove, or not to apply" a land use regulation—is not merely to suspend the regulation that would otherwise apply; rather, the Measure 37 waiver amounts to an *amendment* of the land use regulations themselves as they would otherwise apply to the property at issue. At issue in that case was the constitutionality of Measure 37 as against a challenge that it violated Article I, section 22, of the Oregon Constitution, which prohibits the suspension of laws except by the legislature. The court disposed of the challenge with the following discussion:

"A nineteenth-century dictionary defines 'suspend,' for our purposes here, as 'to interrupt; to intermit; to cause to cease for time'; 'to stay, to delay; to hinder from proceeding for a time'; or 'to cause to cease for a time from operation or effect.' Noah Webster, 1 *An American Dictionary of the English Language*, s.v. 'suspend' (Johnson 1828); *see also Rico-Villalobos v. Giusto*, 339 Or 197, 206, 118 P3d 246 (2005) (when analyzing terms in original Oregon Constitution, court examines meanings of terms as framers would have understood them). Applying those definitions, it is clear that Measure 37 does not 'cause to cease for a time,' 'delay,' or 'interrupt' any land use regulation. Instead, it authorizes a governing body to 'modify, remove, or not * * * apply' certain such regulations in specific situations. *The measure is, in effect, an amendment of the land use regulations in those particulars*. No law is 'suspended'; all laws not amended remain in effect."

340 Or at 132 (ellipsis in original; emphasis added).

■      In light of the Supreme Court's reading of the effect of Measure 37 waivers in *MacPherson*, the answer to the question before us is straightforward. There is no debate that the minimum lot size restrictions and other land use regulations that applied to petitioners' property before they acquired their Measure 37 waivers constituted "standards and criteria" within the meaning of the goal-post statute. If, as the Supreme Court has held, the effect of their Measure 37 waivers amounts to an *amendment* of those same standards and criteria, it would seem necessarily to follow that the waivers are themselves standards and criteria within the meaning of the goal-post statute.

LUBA's reasoning in support of a contrary conclusion cannot be reconciled with *MacPherson*. As we have noted, LUBA characterized Measure 37 waivers as, in effect, suspensions of the operation of the land use regulations that otherwise would apply to petitioners' property. The Supreme Court expressly concluded in *MacPherson* that Measure 37 did not have that effect. *Id*.

There remains the question whether, notwithstanding the applicability of the goal-post statute, Measure 49 supersedes the Measure 37 waivers. Measure 49 modifies Measure 37 "by narrowing the circumstances that trigger its

remedies and limiting the scope of those remedies." *Frank*, 217 Or App at 502-03. The statement of legislative policy at the beginning of Measure 49 declares that its purpose is "to modify Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources." Or Laws 2007, ch 424, § 3(2). To effectuate that purpose, Measure 49 provides that, with one exception that applies to common-law "vested rights," all Measure 37 claims must be refiled under the new law:

> "A claimant that filed a claim under ORS 197.352 [Measure 37] on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly is entitled to just compensation as provided in:
>
> "(1)  Section 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundary of any city;
>
> "(2)  Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary; or
>
> "(3)  A waiver issued before the effective date of this 2007 Act to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

Or Laws 2007, ch 424, § 5. Sections 6 and 7, referred to in subsection (1) of the foregoing quotation, provide that claimants whose claims relate to land outside an urban growth boundary are limited to between three and 10 home site approvals, depending on the nature of the land. Or Laws 2007, ch 424, §§ 6-7. Section 9, referred to in subsection (2) of the quotation, provides a different remedy for claims relating to land located within an urban growth boundary. Or Laws 2007, ch 424, § 9.

The legislature's intention to supersede Measure 37 has been confirmed in the case law construing Measure 49. In *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008), the Supreme Court concluded that "[a]n examination of the text

and context of Measure 49 conveys a clear intent to extinguish and replace the benefits and procedures that Measure 37 granted to landowners." According to the Supreme Court, "Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability," subject to the narrow exception for so-called vested rights. *Id.* at 466-67 (emphasis in original). *See also Cyrus v. Board of County Commissioners*, 226 Or App 1, 13, 202 P3d 274 (2009) (holding that, under *Corey*, the enactment of Measure 49 renders pending challenges to Measure 37 waivers moot).

In this case, petitioners filed their Measure 37 claim before the adjournment of the 2007 legislative session. Moreover, they have expressly disclaimed any reliance on the exception for "vested rights" claims. In consequence, their claim is plainly governed by Measure 49. There seems to be no debate about that much. Petitioners' argument is that, because their Measure 37 claim is subject to the goal-post statute, it is immune from the effect of Measure 49. In making that argument, however, petitioners appear to assume that the goal-post statute effectively trumps Measure 49. We do not understand why the goal-post statute would have that effect.

We are confronted with a case in which two statutes apply, but do so in inconsistent fashion. On the one hand, the goal-post statute provides that, once petitioners' application was completed, the standards and criteria that applied at that time—including, as we have held, their Measure 37 waivers—cannot be changed. On the other hand, Measure 49 provides that petitioners' Measure 37 waivers no longer have legal effect. There is no way to reconcile the two statutes as they apply to this case.

When two statutes apply in an inconsistent fashion, there are rules by which the courts are required to resolve the inconsistency. ORS 174.020(2) provides that, "[w]hen a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent." *See also Powers v. Quigley*, 345 Or 432, 438, 198 P3d

919 (2008) ("[I]f two statutes are inconsistent, the more specific statute will control over the more general one."). In a similar vein, if an earlier statute is inconsistent with a later one, the later is held to implicitly repeal the earlier to the extent of the inconsistency. *See, e.g., State ex rel Huddleston v. Sawyer*, 324 Or 597, 604, 932 P2d 1145, *cert den*, 522 US 994 (1997) (" 'If earlier and later statutes are in irreconcilable conflict, then the earlier must yield to the later by implied repeal.' " (Quoting *Anthony et al. v. Veatch et al.*, 189 Or 462, 481, 220 P2d 493 (1950).)).

In this case, both rules apply, and both lead to the same result: Where the goal-post statute and Measure 49 irreconcilably conflict, Measure 49 prevails. The goal-post statute applies generally to all applications for permits or zone changes, not just to cases involving Measure 37 waivers. It is clearly the more general statute and must, as a result, yield to the more specific Measure 49. Similarly, the goal-post statute, which dates back to 1983, Or Laws 1983, ch 827, § 23, must yield to Measure 49, which was enacted more than 20 years later.

■    We conclude, therefore, that, although Measure 37 waivers are part of the standards and criteria that cannot be changed under the goal-post statute, Measure 49 supersedes both Measure 37 and the goal-post statute. It necessarily follows that LUBA correctly determined, albeit for a different reason, that the county erred in approving petitioners' application.

Affirmed.