Argued and submitted October 29, 2009, affirmed December 29, 2010

A. L. BRUNER
and Marilyn Bruner,
*Plaintiffs-Appellants,*

*v.*

JOSEPHINE COUNTY,
a political subdivision of the
State of Oregon,
*Defendant-Respondent.*

Josephine County Circuit Court
08CV0404; A140018

246 P3d 46

Jack H. Swift argued the cause and filed the briefs for appellants.

Steven E. Rich, Josephine County Legal Counsel, argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

---

* Brewer, C. J., *vice* Edmonds, P. J.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiffs filed a complaint asserting a number of claims against Josephine County. The claims were based on the county's failure to give effect to its Measure 37 waiver of land use restrictions on plaintiffs' property. The county no longer recognized the waiver after it was repealed by Measure 49. Plaintiffs pleaded that the county's enforcement of Measure 49 in this manner was a breach of contract and a deprivation of a number of constitutional rights. The trial court concluded that the complaint failed to state cognizable claims for relief. Plaintiffs appeal the judgment dismissing the claims. We affirm for the reasons stated below.

We set out the legal context for this case from the discussion in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010). The case under review involves an original law and its replacement, both adopted by the voters, that provide remedies to property owners whose property values are adversely affected by land use regulations. The original law, Measure 37, was adopted through the initiative process in 2004 and initially was codified at ORS 197.352 (2005). The law was subsequently amended, Or Laws 2007, ch 424, § 4, and, in 2007, it was renumbered as ORS 195.305. Measure 37 required state and local governments to provide "just compensation" to a property owner when a governmental entity enacted or enforced a post-acquisition land use regulation that restricted the use of the property in ways that reduced its fair market value. *Former* ORS 197.352(1). Under the measure, that regulatory effect allowed an affected property owner to demand just compensation from the government. If a claimant qualified for relief, the governmental entity could respond in one of two ways: either by paying the claimant the amount of the reduction of the property's value, *former* ORS 197.352(2), or by deciding to "modify, remove, or not to apply the land use regulation * * * to allow the owner to use the property for a use permitted at the time the owner acquired the property," *former* ORS 197.352(8). In the subsequent adjudication of Measure 37 claims, the option to exempt property from otherwise applicable regulations and allow a specified use became known as a "Measure 37 waiver."

The 2007 Legislative Assembly referred to the voters a substitute statute, Measure 49. Measure 49 set out a different compensation allowance for a reduction in fair market value caused by a post-acquisition land use regulation and reduced the degree of residential development allowed under a previously requested Measure 37 waiver. Or Laws 2007, ch 424; *see generally Corey v. DLCD*, 344 Or 457, 184 P3d 1109 (2008) (describing the purpose and effect of Measure 49). The measure was adopted by the voters in a special election held on November 6, 2007, and became effective on December 6, 2007. Or Const, Art IV, § 1(4)(d) (time of effect of initiated or referred measures).

Measure 49 redefines the adjudicatory processes, approval standards, and extent of relief for two classes of Measure 37 claims: those filed on or before June 28, 2007 (the concluding day of the 2007 legislative session) and those filed thereafter. As to the former class of claims, section 5 of the measure provides:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly [June 28, 2007] is entitled to just compensation as provided in:

"(1)   Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;[1]

"(2)   Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary;[2] or

"(3)   A waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective

---

[1] Section 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 home sites under a more narrow set of circumstances.

[2] Section 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances.

date of this 2007 Act to complete and continue the use described in the waiver."

After examining the text and context of Measure 49, the Supreme Court concluded in *Corey*, 344 Or at 466-67:

"In fact, Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability, with a single exception that does not apply to plaintiffs' claim. Thus, after December 6, 2007 (the effective date of Measure 49), the final order at issue in the present case had no legal effect."

(Emphasis in original.) The referenced exception is that a waiver may be used to establish a "common law vested right * * * to complete and continue the use described in the waiver" under section 5(3) of the measure. *See Friends of Yamhill County*, 237 Or App at 177-78 (explaining the relevant factors used to establish a "common law vested right" under section 5(3) of Measure 49). We have followed *Corey* in a number of cases in dismissing as moot claims based on Measure 37. *See, e.g., Charles Wiper Inc. v. City of Eugene*, 235 Or App 382, 232 P3d 985 (2010) (vacating judgment and dismissing claims as moot in light of Measure 49); *Bleeg v. Metro*, 229 Or App 210, 211 P3d 302 (2009), *rev den*, 349 Or 56 (2010) (same); *Olson v. DLCD*, 220 Or App 77, 184 P3d 1220 (2008) (same). Plaintiffs' claims are based on that desiccation of their Measure 37 waiver by Measure 49.

According to the allegations in the complaint, plaintiffs purchased a 40-acre tract of property in 1984. At that time, the property was zoned for residential uses. The zoning allowed one-acre home sites. Following plaintiffs' acquisition of the property, the county downzoned the property to agricultural zoning. That zoning required an 80-acre minimum lot size for a residence. Plaintiffs obtained a Measure 37 waiver of the post-acquisition rezonings from the county and began work to plan a planned unit development on the property that was consistent with the 1984 zoning. The county refused to process the planned unit development approval until plaintiffs obtained a Measure 37 waiver from post-acquisition statutes that restricted residential use of the property. Following the adoption of Measure 49, the county

refused to issue development permits based on its Measure 37 waiver.

Plaintiffs' complaint alleged four claims for relief: (1) a claim for the monetary relief that plaintiffs could have obtained under Measure 37 based on "equitable estoppel" (plaintiffs' acceptance of a waiver instead of monetary compensation under Measure 37 and the county's subsequent failure to honor the waiver); (2) a breach of contract claim arising because of the county's failure to ratify the waiver; (3) an unconstitutional taking or "impairment" of a property interest in the waiver; and (4) a requested peremptory writ of mandamus directing the county to allow development of the property under the zoning in effect at the time of their acquisition of the land. The county moved to dismiss the claims as facially deficient under ORCP 21 A(8).[3] The county argued that Measure 49 undercut the continued viability of plaintiff's Measure 37 waiver; the waiver did not create a contract that could be breached; there was no property interest to be taken; there was no clear duty of the county that could be enforced by writ of mandamus; and the state was a necessary party to any claim about the facial constitutionality of Measure 49. The trial court agreed that no rights remained with the plaintiffs based on Measure 37, no contract was created by the waiver, mandamus was inappropriate in the absence of a clear duty, and the state was a necessary party to any claim on the constitutionality of Measure 49. The court dismissed the complaint and entered judgment against plaintiffs.

On appeal, plaintiffs do not contest the court's rulings on the legal insufficiency of their equitable estoppel or mandamus claims. Instead, we understand plaintiffs to argue that the complaint adequately pleads claims for breach of contract, unconstitutional impairment of the obligation of contracts under the federal constitution,[4] and impairment of

---

[3] ORCP 21 A(8) provides that a motion to dismiss a claim may be allowed for "failure to state ultimate facts sufficient to constitute a claim."

[4] Article I, section 10, of the United States Constitution provides, in part, that "[n]o state shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." Plaintiffs do not raise the applicability of Article I, section 21, of the Oregon Constitution, which provides that "[n]o * * * law impairing the obligation of contracts shall ever be passed."

judicial functioning under Article III, section 1, of the Oregon Constitution.[5]

Those particular arguments, to whatever extent they were preserved in the trial court proceedings, were decided against plaintiffs in *Smejkal v. DAS*, 239 Or App 553, 246 P3d 1140 (2010). In *Smejkal*, we held that the granting of a waiver under Measure 37 did not create a contractual obligation of the issuing governmental entity that could be breached or impaired. *Id.* at 561. We also concluded that the repeal of an issued Measure 37 waiver by operation of Measure 49 did not unduly burden judicial functioning under Article III, section 1. *Id.* at 562-63. In light of *Smejkal*, the trial court did not err in dismissing plaintiffs' claims for breach of contract, impairment of contract, and interference with judicial functioning.

What remains is plaintiffs' argument that the legislative repeal of their Measure 37 waiver by Measure 49 was a taking of property without just compensation under the Fifth Amendment to the United States Constitution.[6] Plaintiffs do not clearly articulate the specific property interest alleged to be taken by Measure 49.[7] However, the effect of the use

---

[5] Article III, section 1, of the Oregon Constitution provides:

"The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including administrative, and the Judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

[6] The Fifth Amendment provides that "[n]o person shall be * * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Plaintiffs do not raise the applicability of Article I, section 18, of the Oregon Constitution, which provides that "[p]rivate property shall not be taken for public use * * * without just compensation * * *."

[7] The legal effect of Measure 49 on the Measure 37 waiver, a zoning permit to develop the property, is not assessed under regulatory takings principles. Whether zoning permissions have ripened to a degree sufficient to immunize the use from regulatory controls is tested by the "common law vested right" doctrine referenced in section 5(3) of Measure 49. *Corey* notes that vested rights in this sense means "a property owner's rights when land use laws are enacted that make a partially finished project unlawful. *See, e.g., Clackamas Co. v. Holmes*, 265 Or 193, 197, 508 P2d 190 (1973) (describing 'vested rights' in those terms)." 344 Or at 466. Plaintiffs' complaint does not allege actions taken upon their property sufficient to vest development rights under *Holmes, i.e.*, a substantial commencement of construction or the incurring of substantial costs toward completion of development of the property. *See* 265 Or at 197.

limitations in Measure 49 on plaintiffs' entire property interest, their developable real property, must be assessed in order to determine if a regulatory taking has occurred under the Fifth Amendment. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 US 302, 331-32, 122 S Ct 1465, 152 L Ed 2d 517 (2002) (use of entire property interest, "parcel as a whole," in evaluating under the Fifth Amendment a regulation that prohibits certain uses of property); *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 151-54, 117 P3d 990 (2005) (using "parcel as a whole" for assessing effect of use limitation under the Fifth Amendment). Plaintiffs appear to argue that the augmented value of their real property under Measure 37 has been diminished by the legal effect of Measure 49 in vitiating their waiver and that that loss of value is a taking under the Fifth Amendment.

Under the federal constitution, however, the regulatory effect of a statute must go well beyond the use limitations imposed by Measure 49 to create an inverse condemnation claim. In addition to the uses allowed by the applicable zoning, Measure 49 gave plaintiffs the right to construct additional residences on the parcels. Given that, plaintiffs' complaint could not, and does not, plead that they have been deprived of all economically viable uses of their property sufficient to create a *per se* taking under the Fifth Amendment, *see Lucas v. South Carolina Coastal Council*, 505 US 1003, 1015, 112 S Ct 2886, 120 L Ed 2d 798 (1992) (stating that test).

Plaintiffs likewise do not argue that the pleaded facts are sufficient to show that a Fifth Amendment taking occurred under the "balancing test" articulated in *Penn Central Transp. Co. v. New York City*, 438 US 104, 124, 98 S Ct 2646, 57 L Ed 2d 631 (1978) (assessing factors of the "economic impact of the regulation on the claimant" including "the extent to which the regulation has interfered with distinct investment-backed expectations" and the "character of the governmental action" including whether the "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good").

We conclude that the trial court did not err in dismissing plaintiffs' regulatory takings claim. Plaintiffs' remaining assignments of error are without merit and do not warrant further discussion.

Affirmed.