Argued and submitted May 10, reversed and remanded December 29, 2010

Jeanne BIGGERSTAFF
and Carr Biggerstaff,
wife and husband,
*Petitioners-Appellants,*

*v.*

BOARD OF COUNTY COMMISSIONERS
OF YAMHILL COUNTY,
an Oregon municipal corporation;
Ralph E. Johnson and Norma J. Johnson,
Trustees of the Johnson Living Trust,
dated June 16, 1995,
*Respondents-Respondents.*

Yamhill County Circuit Court
CV080224; A140978

245 P3d 688

Charles Swindells argued the cause and filed the brief for appellants.

Edward H. Trompke argued the cause for respondents Ralph E. Johnson and Norma J. Johnson, Trustees of the Johnson Living Trust, dated June 16, 1995. With him on the brief was Jordan Schrader Ramis PC.

John M. Gray, Jr., waived appearance for respondent Board of County Commissioners of Yamhill County.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioners appeal the circuit court's judgment in a writ of review proceeding that affirmed the county's determination that respondents Ralph E. and Norma J. Johnson (the Johnsons) have a vested right to complete development of a 41-lot residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004).[1] On appeal, petitioners contend that the reviewing court misconstrued the applicable law in sustaining the vesting officer's determination that the Johnsons have a vested right to complete that development because the Johnsons' expenditures were not made in good faith and because there was inadequate consideration of the expenditure ratio (*viz.*, the ratio of expenditures to total project cost). For their part, the Johnsons raise myriad alternative bases for affirmance contending, *inter alia*, that Measure 49 does not apply retroactively and is unconstitutional under various provisions of the state and federal constitutions. For the reasons explained below, consistently with our recent decision in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010), we reject petitioners' legal contention concerning good faith but conclude that the court should have remanded the decision to the county to determine the total project cost and to give proper weight to the expenditure ratio under the circumstances of this case. Accordingly, we reverse and remand the reviewing court's judgment.

---

[1] In *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 59-60, 246 P3d 56 (2010), we explained the legal context in which this case arose:

"Ballot Measure 37 (2004) * * * was enacted through the initiative process and codified as *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007). Measure 37 essentially provided that public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations. Measure 37, however, was controversial. The potential disruptive effect of Measure 37 development, together with a lack of clarity in Measure 37's provisions, led to calls for a revision of the measure.

"Ultimately, the 2007 Legislative Assembly referred to the voters a substitute statute, Ballot Measure 49, that narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver. The voters approved Measure 49, and it became effective on December 6, 2007."

(Internal quotation marks, citations, and brackets in original omitted; omission in original.)

The material facts are uncontroverted. Measure 37 waivers from the county and the state allowed for the development of a 41-lot subdivision on the Johnsons' property. The Johnsons expended over $1 million to develop the property and recorded the final subdivision plat for the development before Measure 49 became effective on December 6, 2007. Significantly, the Johnsons' expenditures included the cost of constructing several extremely small "dwellings."[2]

After Measure 49 became effective in December 2007, the Johnsons applied for a determination from the county that they had a vested right to complete and continue the use described in the Measure 37 waivers.[3] The Johnsons' application included a document indicating that the total project budget was $2,082,406.50, including $665,280.00 for the "dwellings," which reflects a cost for each of those structures of approximately $16,000. For their part, petitioners asserted that "[t]he information provided by the [Johnsons] to demonstrate a substantial ratio of costs incurred to date relative to the total cost of the project is * * * inadequate" and that "the review authority must consider costs incurred to

_____

[2] As the trial court noted, the structures have been "variously described as 'homes,' 'placeholder buildings,' or 'shacks.'" Our understanding is that these dwellings were approximately 10 by 12 feet in size.

[3] As pertinent to this case, section 5(3) of Measure 49 provides that claimants who had filed Measure 37 claims before June 28, 2007, had an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver*."

(Emphasis added.)

As we indicated in *Kleikamp*,

"In *Friends of Yamhill County*, we examined the meaning of the term 'common law vested right' as used in section 5(3) of Measure 49. In doing so, we surveyed Oregon case law, including the Supreme Court's decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project."

240 Or App at 60. *See also Friends of Yamhill County*, 237 Or App at 159-65 (surveying Oregon's vested rights case law).

date relative to the <u>final</u> cost of the <u>completed</u> development—in this case, 40 (or 41) single family dwellings in compliance with the [2,500 square-foot] minimum floor area and design review requirements" of the Covenants, Conditions and Restrictions (CCRs) that govern the property. (Underscoring in original.)

In response and alternatively, the Johnsons reasoned that, even if the total project cost included the cost to establish 2,500 square-foot dwellings at $150 per square foot, they had expended "7% of the total cost," which is "considered sufficient" for purposes of acquiring a vested right. Further, the Johnsons reasoned that "expenditures of over $155,000 and $1,000,000 are sufficient in themselves" to constitute "substantial expenditures" toward vesting.

The county's vesting officer reasoned that "[a]ll of the expenses in this case were legitimately incurred, in good faith, and are substantial." With regard to the total project cost, he noted that

> "[t]he total cost presented by the applicants appears to include the cost of constructing several small, shed-like dwellings on the property. The structures were designed to meet the building code definition of dwelling, are plumbed, and have final electrical inspections. Five have received occupancy approval."

Further, the vesting officer noted that,

> "[i]f the cost of constructing all of the proposed homes is the measure, there is the additional question of whether to consider the cost of the types of homes the applicant has built; that the applicant is contemplating; the cost of a legal, habitable dwelling; an 'average cost'; or other measure."

Nevertheless, the vesting officer concluded that "[t]his is a speculative analysis that may be necessary in other cases in which this factor deserves to be given more weight, but is not necessary to properly address [the expenditure ratio] in this case." In other words, the vesting officer determined that the identification of the total project cost for purposes of considering the expenditure ratio was unnecessary in the circumstances of this case. Ultimately, the vesting officer concluded

that the Johnsons "had a common law vested right to complete and continue the use described in the waivers." Petitioners sought review of the vesting officer's decision.

On review, the court affirmed the vesting officer's determination, concluding that the Johnsons had "establish[ed] a vested common law right to complete the residential use of the property as described in the waivers." As pertinent to the dispositive issue in this appeal, the trial court issued a letter opinion in which it explained that, in considering the expenditure ratio—that is, the ratio of expenditures to total project cost—to determine whether the Johnsons had established a vested right, it was unnecessary to identify the denominator in the ratio, *i.e.*, the total project cost.[4] Although the court noted a total project cost of $2,300,000, it indicated that that figure "may be somewhat flawed by inclusion of a $15,610 cost per dwellings (total $640,000). Perhaps that is the cost of the sheds. Even if the cost of [the] houses is doubled, though, there is sufficient evidence to make this factor favorable to the landowners."

More specifically, with regard to the "dwellings" that the Johnsons had constructed on the property, the court reasoned:

"The record does not demonstrate that these small buildings—I will use the term 'sheds'[—]were intended for gardening or some other use arguably adjunct to the dwelling and residential use of the lot. Rather it appears they were built as temporary 'dwellings,' with plumbing and electricity solely for purposes of advancing the extent of expenditure on dwellings. While neither the vesting officer nor this court should speculate, it is nearly impossible to envision those buildings becoming the dwellings the residential use contemplated. * * * The most likely scenario is that they will be used for what they are—sheds—on site or separately sold and removed as garden or utility sheds."

(Footnote omitted.) Further, the court explained that those structures failed to meet the size requirements of the CCRs,

[4] The trial court's letter opinion also addressed four other cases that were in a similar procedural posture. Three of those cases have been appealed to this court. *See Friends of Yamhill County*, 237 Or App 149; *Kleikamp*, 240 Or App 57; *Damman v. Board of Commissioners of Yamhill County*, 241 Or App 321, 250 P3d 933 (2011).

noting specifically that the "Johnsons argue that the [CCRs] are not applicable to them, only persons who purchase the lots. Technically, this may be true. But it does reinforce the notion that these sheds will never be used by the present landowner or any subsequent purchaser because they are of vastly inadequate size."

Consistently with its letter opinion, the court entered a judgment that affirmed the vesting officer's determination that "the landowners have a vested right to complete development of the property under the principles of common law." Petitioners appeal.

On appeal, petitioners contend that the reviewing court erred in sustaining the vesting officer's determination that the Johnsons have a vested right to complete the residential development. In support of that contention, petitioners posit two independent legal bases. First, petitioners assert that

"[t]he common law of vested rights does not permit a landowner to aggressively accrue expenditures in anticipation of a 'finish line' date[—that is, in this case, December 6, 2007, the effective date of Measure 49—]in order to secure a right to complete and continue that use after it becomes unlawful."

Second, petitioners assert that a vesting determination, in this context, required identification and consideration of the expenditure ratio, which, in turn, requires a determination of "the final cost of the completed development" and that, "[i]n this case, the [vesting] officer and trial court lacked a denominator (the total project cost) in the ratio factor." (Underscoring omitted.)

Conversely, the Johnsons contend that the vested rights analysis was properly applied in the circumstances of this case. With regard to the expenditure ratio, they assert that "[a] specific denominator is not required to properly consider the ratio factor" and that "expenditures of over $155,000 are considered substantial as a matter of law and therefore sufficient to satisfy this factor, without considering a specific ratio of the amount spent to the total cost." (Emphasis omitted.) The Johnsons also raise a variety of alternative

bases for affirmance predicated on various statutory as well as state and federal constitutional provisions.

■     We turn first to petitioners' contention concerning the Johnsons' purported lack of good faith in making their development expenditures. We addressed the concept of "good faith" in a vested rights determination in *Friends of Yamhill County*, concluding that

> "[a]n interpretation of section 5(3) that takes into account only those landowner's investments made before July 15, 2007 (the referral date for Measure 49) or November 6, 2007 (the adoption date for Measure 49) is plainly inconsistent with the express direction of section 5(3) that the vesting calculation be made 'on the effective date of this 2007 Act' and not earlier. The timing of expenditures made before that date is irrelevant to an assessment of the claimant's good faith in particular or to the determination of the accrual of vested rights in general."

237 Or App at 176. For the reasons stated in *Friends of Yamhill County*, we reject petitioners' contentions that the expenditures that the Johnsons made up to the effective date of Measure 49 were not made in good faith.[5]

---

[5] To the extent that petitioners assert that the dwellings that the Johnsons constructed on the property were erected in bad faith, we adopt the vesting officer's reasoning:

"As noted, the [Johnsons] in this case also built several small buildings, intended to be the minimum required to constitute dwellings. The buildings were constructed under permits issued by the county building and planning department. The construction of mini-dwellings in this case has a bad faith quality to it. However, it is more plausible from the record that * * * the [Johnsons] were exercising an abundance of caution, and reacting directly to their apparent understanding that they might need to complete some houses in order to vest their rights under [Measure] 49, rights they had been diligently seeking to perfect since [Measure] 37 was adopted.

"Given the wording of the measure and the facts of this case, there is no substantial evidence of bad faith, and no basis to impute bad faith to the [Johnsons]. * * * It was objectively reasonable for them to conclude, from a fair reading of [Measure] 49, that the actions they took before the election would constitute good faith efforts to vest their right to keep, develop and/or sell all of the lots in their subdivision. Even following the election, reasonable diligence would likely have yielded advice that the [Johnsons] should continue to take steps toward the vesting of their rights, because the section granting vested rights specifically referenced the effective date of the act (twice) as the only point of reference."

What remains is petitioners' contention concerning the application of the expenditure ratio factor. In *Friends of Yamhill County*, we reasoned that, in determining whether a vested right exists in this context, consideration of the expenditure ratio is "necessary." 237 Or App at 178. More recently, in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 65-66, 246 P3d 56 (2010), we reiterated the fundamental underpinnings of our directive in *Friends of Yamhill County*. More specifically, we noted that, in all but the most exceptional case, "a landowner's proof of 'substantial expenditures' is the *sine qua non* of a vesting determination" and that, "[f]or vesting purposes, we understand that the concept of 'substantial expenditures' * * * requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio." *Kleikamp*, 240 Or App at 66.

Consideration of the expenditure ratio requires, in turn, that a landowner demonstrate the total project cost—that is, "the *likely costs* of completing the particular development sought to be vested *based on construction costs as of December 6, 2007.*" *Friends of Yamhill County*, 237 Or App at 178 (emphasis added). Significantly, in *Kleikamp*, we also explained that

"a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007. * * * Thus, it is incumbent on the property owner to establish the likely total project cost in relation to the size and character of the structures that the owner contemplated building in compliance with a Measure 37 waiver as of December 6, 2007."

240 Or App at 66-67.

In light of those principles, we conclude, as we did in *Friends of Yamhill County*, that the reviewing court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances of this case." 237 Or App at 178. *See also Kleikamp*, 240 Or App at 67 (reversing trial court judgment on same ground); *accord Davis v. Jefferson County*, 239

Or App 564, 245 P3d 665 (2010). Here, both the vesting officer and the reviewing court determined that, under the circumstances, because of the magnitude of the Johnsons' expenditures, it was unnecessary to establish a denominator in the expenditure ratio. That is a legal error that requires reversal.[6]

Finally, the Johnsons proffer a smorgasbord of alternative bases for affirmance, predicated variously on statutory, state constitutional, and federal constitutional provisions. We have previously rejected some of those contentions. *See, e.g., Bruner v. Josephine County*, 240 Or App 276, 246 P3d 46 (2010) (rejecting the contention that the legislative repeal of a Measure 37 waiver by Measure 49 is a taking of property without just compensation under the federal constitution); *Smejkal v. DAS*, 239 Or App 553, 558, 246 P3d 1140 (2010) (concluding that Measure 37 waivers are not contracts that could be impaired by Measure 49); *Powell v. DLCD*, 238 Or App 678, 690, 243 P3d 798 (2010) (rejecting contention that Measure 49 "through retroactive application violates [the plaintiff landowner's] right to substantive due process under the Due Process Clause of the Fourteenth Amendment"); *Bleeg v. Metro*, 229 Or App 210, 211 P3d 302 (2009), *rev den*, 349 Or 56 (2010) (rejecting contention that Measure 49, by its terms, was not to be afforded retroactive application); *Pete's Mountain Homeowners Assn. v. Clackamas Cty.*, 227 Or App 140, 204 P3d 802, *rev den*, 346 Or 589 (2009) (rejecting asserted application of "goal-post statute," ORS 215.427(3)(a), in this context). We decline, as a prudential matter, to address and resolve those alternative bases for affirmance that the court has not previously rejected in other cases.

---

[6] Although there is some evidence in this case concerning the total project cost, on remand from the reviewing court, it will be incumbent on the county vesting officer to determine how, if at all, that evidence bears on a determination of total project cost in light of the principles explained in *Friends of Yamhill County* and reiterated in *Kleikamp*. Further, as the reviewing court noted, in considering the expenditure ratio, "the cost [of the small dwellings constructed on the property] should not be considered in the expenditures of the landowners" because they were not "built in furtherance of the permitted, though nonconforming, residential use of the property" and "are not the 'single family dwellings' referred to in the waivers."

■ Under *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), our consideration of an alternative basis for affirmance is a matter of prudential discretion and not compulsion. *See Fox v. Collins*, 213 Or App 451, 461, 162 P3d 998, *rev den*, 343 Or 223 (2007) ("Under *Outdoor Media*, we may—as a matter of discretion—affirm a trial court ruling on an alternative basis when certain conditions are met."). Here, we elect not to exercise that discretion. Many of the Johnsons' present contentions were not preserved, much less fully developed, in the writ of review proceeding. Although that is not preclusive of our consideration where proffered alternative bases for affirmance are purely legal and do not implicate factual determinations, that posture can militate against our consideration in the first instance, especially where, as here, various of the Johnsons' contentions present substantial issues of statutory and constitutional law. Further, depending on the result of the proceedings following remand, any need to address and resolve those matters may be obviated. Accordingly, we decline to address them.

Reversed and remanded.