246 P.3d 56 (2010)
240 Or. App. 57
T.J. KLEIKAMP and Friends of Yamhill County, Inc., an Oregon non-profit corporation, Petitioners-Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF YAMHILL COUNTY, Respondent-Respondent, and
Glenn H. Gregg, Donald E. Gregg, and Sharlene L. Gregg, Intervenor-Respondents-Respondents.
CV080304; A140999.
Court of Appeals of Oregon.
Argued and Submitted May 10, 2010.
Decided December 29, 2010.
*57 Ralph O. Bloemers argued the cause for appellants. On the brief was Isa A. Taylor.
Edward H. Trompke, Lake Oswego, argued the cause for respondents Glenn H. Gregg, Donald E. Gregg, and Sharlene L. Gregg. With him on the brief were Tara A. Aarnio and Jordan Schrader Ramis PC.
John M. Gray, Jr., waived appearance for respondent Board of County Commissioners of Yamhill County.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and DUNCAN, Judge.
HASELTON, P.J.
Petitioners appeal the circuit court's judgment in a writ of review proceeding that affirmed the county's determination that respondents Glenn, Donald, and Sharlene Gregg (the Greggs) have a vested right to complete development of a 13-lot residential subdivision and equestrian center in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004). On appeal, petitioners contend that the reviewing court misconstrued the applicable law in sustaining the vesting officer's determination that the Greggs have a vested right to complete that development because (1) the Greggs had not initiated construction of residences; (2) a significant portion of the Greggs' development expenditures were not made in good faith; and (3) there was not adequate consideration of the expenditure ratiothat is, a comparison of the relevant expenditures to the "total project cost." Consistently with our recent decision in Friends of Yamhill County v. Board of Commissioners, 237 Or.App. 149, 238 P.3d 1016 (2010),[1] we reject petitioners' legal contentions concerning the initiation of construction and good faith but conclude that the court *58 should have remanded the decision to the county to determine the total project cost and to give proper weight to the expenditure ratio in the circumstances of this case. Accordingly, we reverse and remand the reviewing court's judgment.
Before turning to the facts in this case and to provide context, we briefly describe the evolving legal context in which this case arose.[2] "Ballot Measure 37 (2004) * * * was enacted through the initiative process and codified as former ORS 197.352 (2005), amended by Oregon Laws 2007, chapter 424, section 4, renumbered as ORS 195.305 (2007)." English v. Multnomah County, 230 Or.App. 125, 127 n. 1, 213 P.3d 1265 (2009), rev. dismissed, 348 Or. 670, 237 P.3d 825 (2010). Measure 37 essentially provided that "public entities that enacted or enforced land use regulations that adversely affected the fair market value of a claimant's property either had to pay just compensation or waive the offending regulations." Id. Measure 37, however, was controversial. "The potential disruptive effect of [Measure 37] development, together with a lack of clarity in Measure 37's provisions, led to calls for a revision of the measure." Friends of Yamhill County, 237 Or.App. at 152, 238 P.3d 1016.
Ultimately, "[t]he 2007 Legislative Assembly referred to the voters a substitute statute, [Ballot] Measure 49, that narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver." Id. The voters approved Measure 49, and it became effective on December 6, 2007. Id.
As pertinent to this case (as well as others throughout the state), section 5(3) of Measure 49 provides that claimants who had filed Measure 37 claims before June 28, 2007, had an entitlement to just compensation as provided in
"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."
(Emphasis added.)
In Friends of Yamhill County, we examined the meaning of the term "common law vested right" as used in section 5(3) of Measure 49. In doing so, we surveyed Oregon case law, including the Supreme Court's decision in Clackamas Co. v. Holmes, 265 Or. 193, 198-99, 508 P.2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project.[3] In sum, we explained that the case law
"establish[ed] that all of the Holmes factors are material to the determination of a vested right and that they are interrelated. The inquiry is equitable in nature, requiring an evaluation of the progress of land development at the time of the downzoning, either in terms of a substantial start of construction of the vested use itself or substantial expenditures toward that particular end (as distinguished from expenditures for an otherwise lawful use of the property). The adaptability of expenditure factor is more significant * * * when the change of law does not entirely preclude the intended use. The degree of construction or expenditures necessary to be substantial depends on the proportion of those efforts or costs to the total project buildout or budget. Given the interrelatedness of the factors, the degree of construction or expenditure necessary to be substantial may be affected by the other Holmes factors (good or bad faith of landowner, size of project, the location of project with respect to other uses) and other equities, *59 including the past conduct of the zoning authorities. Similarly, the degree to which a particular factor is material to a determination of vested rights is affected by the strength or weakness of the equities that result from the application of the remaining factors."
Friends of Yamhill County, 237 Or.App. at 165, 238 P.3d 1016 (emphasis added).
In light of that context, we turn to the uncontested material facts in this case. Measure 37 waivers from the county and the state allowed for the development of a 13-lot subdivision with single-family dwellings and an equestrian center on the Greggs' property.[4] The Greggs expended approximately $488,255.55 to develop the property, recorded the final subdivision plat for the development, and obtained building permits before Measure 49 became effective on December 6, 2007.
Thereafter, the Greggs applied for a determination from the county that they had a vested right to complete and continue the use described in the Measure 37 waivers. In their application for a vesting decision, the Greggs asserted that "[t]he `total cost of establishing the use' is unknowable at this time because the cost of building the houses and the equestrian facilities will be based on how soon they will be built and on overall development costs going forward."[5]
The county's vesting officer reasoned that "[a]ll of the expenses in this case were legitimately incurred, in good faith, and are substantial" and that, in making that determination, it was unnecessary to determine the total project cost. Ultimately, the vesting officer concluded that "[t]he [Greggs] have also demonstrated that, on the effective date of Measure 49, they had a common law vested right to complete and continue the use described in the waivers." Petitioners sought review of the vesting officer's decision in circuit court.
On review, the court affirmed the vesting officer's vesting determination, concluding that the Greggs had "establish[ed] a vested common law right to complete the residential use of the property as described in the waivers." As pertinent to the dispositive issue on appeal, the court issued a letter opinion in which it explained that, in considering the expenditure ratio factor (viz., a comparison of expenditures to total project cost) in this case to determine whether the Greggs had established a vested right, it was unnecessary to determine the denominator in the ratiothat is, the total project cost.[6] Specifically, the court reasoned:
"I conclude that a specific denomination of the denominator in each of these cases is not necessarily required. Further, even [if] it is, consideration of the other factors may be so favorable to the landowner that the absence of a denominator is simply not fatal to the ultimate conclusion which requires consideration of all factors.
"The denominator may be more important in other cases where, for example, the total cost of establishing the approved use *60 is lower than in these cases. If the total cost of completing a use is $50,000 and the landowners have spent $5,000 that would seem to be a substantial investment, all things else considered (10%). If the total cost is $50,000,000, even $50,000 may not be a substantial investment (.1%)i.e., a reflection of substantial progress toward completing the final usesufficient to weigh this factor in favor of the landowner. Here, of course, the total costs of perfecting the use are somewhere in between. And, in this court's view, it may be possible to determine that the expenditures and progress is `substantial' without a clearly defined estimate of total cost. Appellate cases appear to have applied, or at least allowed, this approach in the past. If the landowners have spen[t] what a reasonable person could conclude is a substantial amount of money that would seem to be a substantial investment so long as the fact-finder can at least reasonably infer that it is a substantial expenditure in relationship to the reasonably foreseeable cost of completion."
(Footnote omitted; emphasis in original.) Further, with regard to this particular case, the court noted that it was "unable to locate figures for total construction, including houses. The vesting officer states that in most cases this is speculative in any event. Perhaps I have simply not found more specific figures. As stated, this may not be fatal."
Consistently with its letter opinion, the court entered a judgment that affirmed the vesting officer's determination that "the landowners have a vested right to complete development of the property under principles of common law." Petitioners appeal.
On appeal, petitioners contend that the reviewing court erred in sustaining the vesting officer's determination that the Greggs have a vested right to complete the residential development. Petitioners posit three independent legal bases in support of that contention. First, according to petitioners, the Greggs could not have a vested right where they had not "broke[n] ground to build the proposed 13 houses" on the property. Second, petitioners assert that the "hundreds of thousands of dollars of development expenditures that [the Greggs] made after they had notice that Measure 49 could void their Measure 37 development rights" were not made in good faith. Finally, petitioners assert that a vesting determination, in this context, required identification and consideration of the expenditure ratiothat is, a comparison of the relevant expenditures to the "total project cost."
Conversely, the Greggs contend that the vested rights analysis was properly applied. Specifically, with regard the expenditure ratio, the Greggs assert:
"Although Holmes used a ratio analysis, subsequent cases have considered whether funds expended are substantial, without regard to a specific ratio. When there is no projected total cost, expenditures of over $155,000 are considered substantial as a matter of law and therefore sufficient to satisfy this factor, without considering a specific ratio of the amount spent to the total cost.
"In this case, the trial court determined that a specific denominator was not required to analyze the ratio factor, and even if it was considered, the other factors favored the [Greggs] to the extent that the failure to include a specific ratio was not fatal to the vested rights determination."
In sum, according to the Greggs, "Holmes does not require the identification of a specific denominator to properly conduct the ratio analysis."
We addressed contentions identical or closely similar to those of the present parties in Friends of Yamhill County. There, we rejected the contentions that the landowner must take "substantial actions to actually initiate the construction of dwellings after the issuance of residential building permits," 237 Or.App. at 166, 238 P.3d 1016, and that expenditures made after June 15, 2007, the referral date of Measure 49, were made in bad faith and were not relevant to consideration of the expenditure ratio factor, 237 Or.App. at 172, 176, 238 P.3d 1016. For the same reasons expressed in Friends of Yamhill County, we reject those contentions here, as well.
*61 What remains is resolution of the parties' competing contentions concerning the application of the expenditure ratio factor. That matter requires that we examine in greater detail the fundamental underpinnings of our directive in Friends of Yamhill County that, in all but the most exceptional Measure 49 case, total project cost must be identified before a legal determination concerning vested rights can be made.
As previously indicated, in Friends of Yamhill County, we reasoned that, in determining whether a vested right exists under section 5(3) of Measure 49, consideration of the expenditure ratio is "necessary" and "involves a comparison of the project-related costs incurred in good faith as of December 6, 2007, with the likely costs of completing the particular development sought to be vested based on construction costs as of December 6, 2007." Id. at 178, 238 P.3d 1016. Accordingly, we concluded that "[t]he failure of the reviewing court to require the county to define the extent and general cost of the project to be vested and to consider and give proper weight to the expenditure ratio factor in this way is legal error in this case because that consideration might have affected the vested rights determination." Id. (internal quotation marks and brackets omitted). Underlying our directive to determine the total cost of the project to be vested are four fundamental principles concerning the identification and application of the expenditure ratio.
First, notwithstanding the diversity of the circumstances present in Oregon's vested rights case law, one constant principle may be distilled from the analyses and the various factors employed in determining whether a landowner has acquired a vested right to continue and complete the development of a nonconforming use: The property owner must have made "substantial expenditures" toward the completion of the development. In other words, in all but the most exceptional case in which the other Holmes vesting factors (e.g., good faith, nature, and location of project) are so compelling as to preclude any other outcome, a landowner's proof of "substantial expenditures" is the sine qua non of a vesting determination.
Second, the term "substantial expenditures" can, in the abstract, refer to an absolute concept pertaining to the sheer magnitude of the expenditures (e.g., $50 million is a "substantial amount" but $1 is not) or a relative concept pertaining to the relationship of the expenditures to the total project cost (e.g., an expenditure of $50,000 on a project with a total cost of $500,000). Alternatively, it may refer to a hybrid of those two concepts. In other words, the sheer magnitude of the expenditures and the relationship of those expenditures to the total cost may be interrelated. For example, depending on the totality of the circumstances, expenditures of $10,000 on a $100,000 project that yields a 10 percent expenditure ratio might not be "substantial," but expenditures of $1 million on a $10 million project that yields the same 10 percent expenditure ratio may be. Conversely, expenditures of $10 million on a $200 million project might not be "substantial." For vesting purposes, we understand that the concept of "substantial expenditures" corresponds to that hybrid formulation and requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio.
Third, because consideration of the expenditure ratio is necessary in determining whether a property owner has made "substantial expenditures," property owners must demonstrate "the likely costs of completing the particular development sought to be vested based on construction costs as of December 6, 2007." Friends of Yamhill County, 237 Or.App. at 178, 238 P.3d 1016 (emphasis added). Without such evidence, the local government's vesting officer (or, in some cases, the reviewing court) is unable to assess the proportional relationship of actual expenditures to the total project cost.
Fourth, as we implicitly recognized in Friends of Yamhill County, a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007. For example, a 15-lot residential subdivision, depending on lot sizes and applicable zoning, could include *62 anything from modest homes to mansions, with consequent substantial differences in the total cost of construction. Thus, it is incumbent on the property owner to establish the likely total project cost in relation to the size and character of the structures that the owner contemplated building in compliance with a Measure 37 waiver as of December 6, 2007.
In light of those principles, we conclude, as we did in Friends of Yamhill County, that the reviewing court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances of this case." 237 Or.App. at 178, 238 P.3d 1016. Here, as in that case, the vesting officer and reviewing court determined that, under the circumstances, because of the magnitude of the Greggs' expenditures, it was unnecessary to establish a denominator in the expenditure ratio. That legal error requires reversal.[7]
Reversed and remanded.
NOTES
[1] See also Davis v. Jefferson County, 239 Or.App. 564, 245 P.3d 665 (2010) (applying Friends of Yamhill County).
[2] For a more detailed description, see Friends of Yamhill County, 237 Or.App. at 151-53, 238 P.3d 1016.
[3] For a detailed discussion of Oregon's vested rights case law, see Friends of Yamhill County, 237 Or.App. at 159-65, 238 P.3d 1016.
[4] Because, on appeal, the parties do not challenge the reviewing court's description of the use contemplated by the waivers as including the development of a 13-lot residential subdivision with an equestrian center, we adopt that description. Nevertheless, we note that the Greggs state, in passing, that "[t]he equestrian facility itself is allowed as a use on the property, under current zoning."
[5] In support of their application, the Greggs' attorney submitted an analysis concerning the factors involved in a vested rights determination in which he "roughly estimated" that the cost to develop the property would be $6,680,000. That figure was based on a "speculative" cost for the equestrian center of "between $1,000,000 and $2,000,000" and an estimated cost of $4,680,000 for construction of the residences. The Greggs' attorney assumed that each of the 13 residences would cost $360,000 to construct based on a "cost of construction at $120 per square foot, and a dwelling of 3,000 square feet (which is the minimum size required by the Declaration of Covenants, Conditions and Restrictions)." For its part, in its comments concerning the Greggs' application, petitioner Friends of Yamhill County estimated that the total project cost would be approximately $7,948,255.
[6] The trial court's letter opinion also addressed four other cases that were in a similar procedural posture. Three of those cases have been appealed to this court. See Friends of Yamhill County, 237 Or.App. 149, 238 P.3d 1016; Biggerstaff v. Board of County Commissioners, 240 Or. App. 46, 245 P.3d 688 (2010); Damman v. Board of Commissioners of Yamhill County (A141019).
[7] Although there are statements in the record in this case concerning the total project cost, and although there is some suggestion that the equestrian center may be an allowed use under current zoning, on remand from the reviewing court to the county, it will be incumbent on the county vesting officer to determine how, if at all, that information bears on a determination of total project cost in light of the fundamental principles underlying our decision in Friends of Yamhill County and reiterated here.