**STATE OF OREGON,**
by and through the
Department of Land Conservation and Development,
*Petitioner below,*
*and*

**OREGON SHORES CONSERVATION COALITION,**
Richard Rowland, and Patricia Rowland,
*Intervenors-Petitioners/Appellants,*

*v.*

**CLATSOP COUNTY,**
*Respondent-Respondent,*
*and*

**James CARLSON**
and Virginia Carlson,
*Intervenors-Respondents/Respondents.*

Clatsop County Circuit Court
082578; A144073

260 P3d 575

Courtney B. Johnson argued the cause and filed the opening brief for appellants. With her on the reply brief was Crag Law Center.

James D. Zupancic argued the cause for respondents James Carlson and Virginia Carlson. With him on the briefs was Neil N. Olsen.

No appearance for respondent Clatsop County.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Petitioners Oregon Shores Conservation Coalition (OSCC) and Richard and Patricia Rowland (collectively petitioners)[1] appeal from the circuit court's judgment in a writ of review proceeding that affirmed respondent Clatsop County's determination that respondents James and Virginia Carlson (the Carlsons) have a vested right to complete development of a residential subdivision in compliance with county and state waivers issued pursuant to Ballot Measure 37 (2004).[2] We reverse and remand.

On appeal, petitioners advance three assignments of error. First, petitioners contend that the circuit court erred in concluding that the Carlsons had a vested right because the Carlsons had not "obtained preliminary approval or any building permits, nor begun construction on residential buildings" prior to the effective date of Measure 49. We reject that argument for the reasons set out in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 166, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011) (*Friends*).

Second, petitioners argue that the county and the circuit court erred by failing to consider whether the Carlsons' use complied with the state and county Measure 37 waivers that they had obtained, as required by section 5(3) of Measure 49.[3] The Carlsons respond that this issue was not

---

[1] Petitioners intervened in the writ of review proceeding after the State of Oregon, through the Department of Land Conservation and Development (DLCD), filed a petition for a writ of review of the county's vested rights determination. DLCD is not a party on appeal. Further, although named as a respondent, Clatsop County has not appeared on appeal.

[2] This is one of many recent cases concerning whether a property owner has a vested right to complete development in compliance with a Measure 37 waiver after the voters approved Ballot Measure 49 (2007), which "narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver." *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 152, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011). For a detailed description of the evolving legal context in which this case arose, see *id.* at 151-53.

[3] As pertinent here, section 5(3) of Measure 49 provides that a claimant who had filed a Measure 37 claim before June 28, 2007, had an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

properly before the circuit court, and it is not before this court, because the question of whether the use of the property complied with the Measure 37 waiver orders was adjudicated as part of the Carlsons' preliminary subdivision application by the Clatsop County Planning Commission. Because our resolution of the third assignment of error requires a remand in this case, we decline to address that assignment.

Third, petitioners argue that the circuit court erred in concluding that the Carlsons had established a vested right in their proposed residential subdivision because (a) the circuit court miscalculated the "expenditure ratio" by failing to consider as part of the denominator the cost of building homes on the property as of December 6, 2007; (b) the Carlsons' expenditures indicated a "rush to vest" and demonstrated "bad faith"; (c) the Carlsons' expenditures were adaptable to an alternative use; and (d) those expenditures did not rise above "mere preparation." We reject petitioners' "bad faith" argument for the reasons set forth in *Friends. See id.* at 176. However, as explained below, petitioners' argument that the circuit court miscalculated the expenditure ratio is well taken, and, because that error requires a remand to afford the board the opportunity to apply the correct legal standard, we decline to consider petitioners' arguments regarding adaptability and "mere preparation."

In a cross-assignment of error, the Carlsons argue that the circuit court erred by declining to dismiss DLCD as a party for lack of standing. Further, the Carlsons argue that, because DLCD lacked standing to participate in the writ of review proceeding, petitioners—who intervened with DLCD—also lacked standing and, thus, the circuit court erred by not dismissing petitioners as parties as well. We reject the Carlsons' cross-assignment without further discussion, for the reasons set forth in *DLCD v. Crook County*, 242 Or App 580, 588-91, 256 P3d 178 (2011).[4]

The material facts are uncontroverted. Since 1957, the Carlsons have owned a 75.65 acre parcel of land in rural

---

[4] Because we hold that DLCD had statutory standing to bring the writ of review, we need not determine whether the Carlsons are correct that an intervenor, having intervened alongside a party that is later determined to lack statutory standing, thereby loses its standing as well.

Clatsop County. In 2006, the Carlsons obtained state and county waivers authorizing them to divide that property into 43 parcels and to place a dwelling on each parcel. The Carlsons subsequently applied for preliminary plat approval for a 31-lot subdivision and expended approximately $244,000, of which the circuit court determined that $163,000 had been incurred before Measure 49 became effective on December 6, 2007.

Thereafter, the Carlsons applied to the county's Director of Transportation and Development Services for a determination that they had a vested right to complete and continue the use described in the Measure 37 waivers. DLCD and petitioners submitted comments in response to the application; OSCC specifically argued that the Carlsons' proposed subdivision was inconsistent with the Measure 37 waivers that they had obtained. The director determined that

> "[T]he Carlsons have expended just over $82,000 in includable expenses, only 2% to 3% of the total cost to develop their property as a residential subdivision, and therefore do not meet the ratio test in *Holmes*. The Carlsons acted in good faith in the initial planning and design of their property (pursuant to their waivers), but their actions in seeking preliminary plat approval and the date on which they began development on the property indicate a rush to beat the effective date of Measure 49. * * * Furthermore, the actual construction was limited to septic test holes and approvals that took place after the effective date of Measure 49. While much of the planning and design expenditures cannot be used for a permitted use, the Carlsons could have seen a return to their investments if they had applied for 1-10 lots under Measure 49.[5]

> "Comparing the Carlsons' case to others in Oregon in which owners have been found to have a vested right, the Carlsons' actions do not rise to the level of a vested right.

---

[5] In addition to providing for just compensation as provided in a Measure 37 waiver under section 5(3), Measure 49 also provides for other forms of just compensation to claimants who had filed a Measure 37 claim before June 28, 2007. For example, "[s]ection 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 homesites under a more narrow set of circumstances." *Friends of Yamhill County*, 237 Or App at 153 n 1. Further, "[s]ection 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances." *Id.* at 153 n 2.

\* \* \* The Carlsons have only tested for septic test holes, and this development took place after Measure 49 was effective. Finally, the proposed development, if construction takes place, is not in compliance with the Carlsons' state Measure 37 waiver, which is required for the Carlsons to continue development.

"Considering all the *Holmes* factors, the Carlsons have not demonstrated a common law vested right to continue and complete the use permitted by their Measure 37 waivers."

Significantly, unlike in other cases that we have considered,[6] the director determined that, in calculating the vested right expenditure ratio, the cost of residences must be included in the denominator. The director noted that the Carlsons had not included the cost of constructing homes on each lot in the subdivision, but the director estimated that, assuming an average price per square foot of $120 and a residence with an area of between 1,500 and 2,500 square feet, the total cost to complete the project was "likely between five and eight million dollars." It followed, the director concluded, that the Carlsons had expended between two and three percent of the total project cost.[7]

Pursuant to a local procedure, the Carlsons appealed the director's decision to the board of commissioners, and, again, DLCD and petitioners submitted comments. The board's decision examined only the vesting factors codified in Clatsop County Ordinance 08-06.[8] With respect to the expenditure ratio, the board disagreed with the director, explaining that

---

[6] *See, e.g.*, *Crook County*, 242 Or App at 585; *Davis v. Jefferson County*, 239 Or App 564, 245 P3d 665 (2010).

[7] The director concluded that the Carlsons had expended $82,251 that was includable in the numerator. The board determined that the Carlsons' claimed expenditures of between $124,000 and $244,000 were includable in the numerator. The circuit court adopted the figure of $163,000 based on the Carlsons claimed total expenditures of approximately $179,000, minus the nine percent interest the Carlsons had included in that figure. Because of our disposition of this case, we need not determine the precise amount of the numerator.

[8] Clatsop County Ordinance 08-06 provided:

"5.01 In determining whether an Applicant has a vested right to continue and complete a use allowed under a Board Order granting Measure 37 relief, the Director, or the Board on appeal, shall consider and apply the following factors:

"[w]e find that depending upon whether the Measure 37 costs, interest costs, and appeal costs are included in the numerator, the [Carlsons] have expended between $124,000 and $244,000 toward the completion of this project. * * *

"If the costs of home construction do not need to be included in the total project cost, then the denominator of the ratio is between $522,000 and $642,000. Depending on what numerator as described above is included, and incorporating the respective limits of the numerator and denominator, the [Carlsons] have expended somewhere between 23% and 38% of the total project cost. The cost to complete the infrastructure is based on the [Carlsons'] engineer's estimate provided by the [Carlsons]. We find that estimate to be credible, and no evidence to the contrary was presented.

"If the costs of home construction must be included, then the denominator must be recalculated. We find that the [Carlsons] qualified expert, who performed a specific market analysis of the project *based on current market conditions*, to be credible. While the County Staff's estimate is certainly one method to value what is otherwise a purely speculative model, it was based on generalized numbers from historic building permits from a broad geographic area. In this case, we find the [Carlsons'] evidence more specific and persuasive than the County Staff's hypothetical. Therefore, the denominator of the ratio, if housing costs are included, is between $1,575,000 and $2,467,000, depending on what costs are allowed in the numerator and whether site built, modular, or manufactured homes are assumed. Depending on the scenario, the [Carlsons] [are]

---

"(1) The amount of money spent on developing the use in relation to the total cost of establishing the use.

"(2) The good faith of the property owner.

"(3) Whether the property owner had notice of the proposed change in law before beginning development.

"(4) The types of expenditures and whether the expenditures could apply to other uses that are allowed under the new law.

"(5) The kind of use, location and cost of the development.

"(6) Whether the owner's acts rise beyond mere contemplated use or preparation, such as the leveling of land, boring of test holes, or preliminary negotiations with contractors or architects.

"(7) Other relevant factors appropriate to the facts of each case and consistent with then current Oregon law."

between 5.3% and 14.4% complete with the project, assuming housing costs must be included.

> "While we decline to pass judgment on whether housing costs must be included, we find that the [Carlsons] [have] proved by a preponderance of the evidence that depending upon one's interpretation of the ratio guideline, the project is at least 5.3% complete, and may be up to 38% complete. This range is within the ranges found in prior decisions that weigh in favor of the [Carlsons]. In any event, we believe the guideline is best described as one of substantiality, and the [Carlsons] have made a substantial investment towards completion of the project. We find that this factor weighs in favor of the [Carlsons]."

(Emphasis added.) The expert witness reported that the Carlsons' proffered estimate had been prepared by a real estate appraiser based on market conditions as of August 2008. As the appraiser opined in his report, "[t]here has been a dramatic change in the residential real estate market since its peak in mid-2005, and its recent sharp decline, noted especially since the beginning of 2008." The appraiser's "local market analysis" was based on residential sales in Clatsop County that occurred in June and July of 2008. The board ultimately concluded that,

> "[t]aken together, and considering all of the evidence in totality, we find that by a preponderance of the evidence sufficient factors weigh in favor of the [Carlsons], and conclude that the [Carlsons] [have] established a vested right to continue the use permitted under Measure 37."

DLCD sought review of the board's decision, by way of writ of review, in the circuit court. As noted, petitioners intervened in support of DLCD.

The court's reasoning, expressed in its letter opinion, was limited to the vesting factors that the board considered. The court concluded that the board's determination that the Carlsons had established a vested right was supported by substantial evidence. Insofar as the expenditure ratio was concerned, the court explained that

> "[t]he board did not provide a breakdown of the expenses provided by [the] Carlson[s], although the director's initial decision * * * provided such an analysis which

the board apparently considered when coming up with a range of figures. The board's low end figure appears to deduct everything the director indicated should be deducted. The upper figure appears to include everything claimed by [the] Carlson[s]. From the vested rights cases, it would appear the low end figure plus what [the] Carlson[s] spent on the Measure 37 process would be included in the numerator, thus a figure of $163,000. I have not found a case which indicates interest is factored into the determination and neither party has provided any citations.

"The closer question is what figure goes into the denominator. The state/interveners argue building costs must be included[.] * * * While those cases provide some authority for their arguments, it is questionable whether *Webber* [*v. Clackamas County*, 42 Or App 151, 600 P2d 448 (1979),] is still considered viable and the court did not specifically indicate in *Cook* [*v. Clackamas County*, 50 Or App 75, 622 P2d 1107, *rev den*, 290 Or 853 (1981),] or *Milcrest* [*v. Clackamas County*, 59 Or App 177, 650 P2d 963 (1982),] if building costs still must be included. * * * The board chose to believe [the] Carlsons' project did not include actual building of houses and the court cannot overturn that factual finding.

"In any event, the board expressly chose to believe the Carlson[s'] expert regarding building costs and rejected other evidence regarding a more likely building cost. My review of the exhibits indicates houses that will be place[d] on the lots will be high end ones and not modular or mobile homes. * * * Even if building costs must be included in the ratio test, the figures found by the board would still indicate substantial expenditure to satisfy this requirement."

The circuit court entered a judgment affirming the board's decision. Petitioners appeal.

On appeal, OSCC renews its argument that the board and the circuit court erred by "ruling that [the Carlsons] established a vested right in the proposed residential subdivision," specifically with regard to the circuit court's calculation of the expenditure ratio. We have previously addressed contentions that are identical or closely resemble those of the parties in this case. In *Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 54, 245 P3d 688 (2010), we summarized the pertinent governing principles:

"In *Friends of Yamhill County*, we reasoned that, in determining whether a vested right exists in this context, consideration of the expenditure ratio is 'necessary.' 237 Or App at 178. More recently, in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 65-66, 246 P3d 56 (2010), we reiterated the fundamental underpinnings of our directive in *Friends of Yamhill County*. More specifically, we noted that, in all but the most exceptional case, 'a landowner's proof of "substantial expenditures" is the *sine qua non* of a vesting determination' and that, '[f]or vesting purposes, we understand that the concept of "substantial expenditures" * * * requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio.' *Kleikamp*, 240 Or App at 65, 66.

"Consideration of the expenditure ratio requires, in turn, that a landowner demonstrate the total project cost—that is, 'the *likely costs* of completing the particular development sought to be vested *based on construction costs as of December 6, 2007.' Friends of Yamhill County*, 237 Or App at 178 (emphasis added). Significantly, in *Kleikamp*, we also explained that

" 'a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007. * * * Thus, it is incumbent on the property owner to establish the likely total project cost in relation to the size and character of the structures that the owner contemplated building in compliance with a Measure 37 waiver as of December 6, 2007.' "

(Second brackets and omissions in *Biggerstaff*.)

Consistently with those principles, we conclude, as we did in *Friends of Yamhill County*, *Biggerstaff*, and *Kleikamp*, that the circuit court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances." *Friends*, 237 Or App at 178. In this case, the board determined that the denominator did not have to include the cost of the residences that were sought to be developed, and the circuit court followed that same analysis. In the alternative, both the board and the circuit court considered building costs

taken from the Carlsons' appraiser's report that were based on construction costs as of August 2008, not as of December 6, 2007, the effective date of Measure 49. Those are legal errors that require reversal.

Reversed and remanded.