Argued and submitted October 7, 2010, reversed and remanded July 13, 2011

Charles M. FISCHER
and Lillian M. Fischer,
Trustees of the Charles M. Fischer
and Lillian M. Fischer Revocable Living Trust,
*Plaintiffs-Appellants,*

*v.*

BENTON COUNTY,
a political subdivision of the State of Oregon;
Mark Lindgren; Josephine Alexander;
Jeff Peterman; and Elizabeth Peterman,
*Defendants-Respondents.*

Benton County Circuit Court
0810538; A143506

260 P3d 647

George B. Heilig argued the cause for appellants. With him on the briefs was Heilig Misfeldt & Armstrong, LLP.

Vance M. Croney argued the cause and filed the brief for respondent Benton County.

Ralph O. Bloemers argued the cause and filed the brief for respondents Mark Lindgren, Josephine Alexander, Jeff Peterman, and Elizabeth Peterman.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

.

## HASELTON, P. J.

Plaintiffs Charles M. and Lillian M. Fischer (the Fischers) appeal the circuit court's judgment in a writ of review proceeding that affirmed respondent Benton County's[1] determination that the Fischers have a vested right to complete a subdivision of their property in compliance with waivers issued pursuant to Ballot Measure 37 (2004)[2] but do not have a vested right to establish seven residential dwellings on the lots in that subdivision. The dispositive legal issue on appeal is whether the circuit court misconstrued the applicable law in sustaining the county's determination that the Fischers did not have a vested right to complete and continue the development of the residential subdivision—including dwellings—because there was inadequate consideration of the expenditure ratio (*i.e.*, a comparison of the relevant expenditures to the "total project cost"). Consistently with our decision in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 165-68, 178, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011), we conclude that the court should have remanded the decision to the county to determine the total project cost and to give proper weight to the expenditure ratio under the circumstances of this case. Accordingly, we reverse and remand the circuit court's judgment.

The material facts are uncontroverted. In early spring 2007, the Fischers obtained state and county waivers that allowed for the development that they ultimately sought—that is, a seven-lot residential subdivision. Thereafter, in October, they obtained tentative subdivision plat approval. The Fischers expended over $66,000 to develop

---

[1] Several of the Fischers' neighbors, Mark Lindgren, Josephine Alexander, and Jeff and Elizabeth Peterman, intervened in the proceeding before the circuit court and are also respondents on appeal. Throughout this opinion we refer to them collectively as "the neighbors."

[2] This is only one of many cases that concern whether a property owner has a vested right to complete development in compliance with a Measure 37 waiver after the voters approved Ballot Measure 49 (2007), which "narrowed the effect of Measure 37, including a reduction in the degree of residential development allowed under a requested Measure 37 waiver." *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 152, 238 P3d 1016 (2010), *rev allowed*, 349 Or 602 (2011). For a detailed description of the evolving legal context in which this case arose, see *id.*, 237 Or App at 151-53.

their property before Measure 49 became effective on December 6, 2007.[3]

Thereafter, the Fischers applied to the county for a determination that they had a vested right to continue and complete the use described in their Measure 37 waivers. Initially, the planning commission affirmed a staff decision denying the Fischers' application. The Fischers then appealed the commission's decision to the Board of Commissioners.

As pertinent on appeal, the board's reasoning reflected uncertainty about how to assess the "use" that the Fischers sought to vest, which, in turn, affected its determination of the "total project cost" as reflected in the denominator of the expenditure ratio. Initially, the board reasoned that, if the "use" was platting the subdivision, "[t]he ratio of expenditures [(*i.e.*, approximately $66,814)] to project cost for the platting of the subdivision [(*i.e.*, approximately $300,745 to $327,952)] is approximately 20% to 22%, which the Board of Commissioners concludes is substantial progress." (Boldface omitted.) Alternatively, the board reasoned that, if the "use" included the establishment of residential dwellings, the "total project cost" could be estimated based on average

---

[3] Under section 5(3) of Measure 49, claimants, such as the Fischers, who had filed their Measure 37 claims on or before June 28, 2007, have an entitlement to just compensation as provided in

"[a] waiver issued before the effective date of this 2007 Act [December 6, 2007] *to the extent that* the claimant's use of the property complies with the waiver and *the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver.*"

(Emphasis added.)

As we recently explained in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 60, 246 P3d 56 (2010),

"[i]n *Friends of Yamhill County*, we examined the meaning of the term 'common law vested right' as used in section 5(3) of Measure 49. In doing so, we surveyed Oregon case law, including the Supreme Court's decision in *Clackamas Co. v. Holmes*, 265 Or 193, 198-99, 508 P2d 190 (1973), in which the court established factors for determining whether a common law vested right exists in a particular case, including (1) the ratio of development expenditures to the total project cost; (2) whether the landowner's expenditures were made in good faith; (3) whether the expenditures are related to the completed project or could apply to other uses of the property; and (4) the nature, location, and ultimate cost of the project."

*See also Friends of Yamhill County*, 237 Or App at 159-65 (surveying Oregon's vested-rights case law).

regional housing construction costs rather than on the cost of purchasing and installing "single-wide manufactured dwellings at a cost of $20,000 to $25,000 [each]" as the Fischers contended. Specifically, the board stated:

> "Based on 2007 building permit records, average cost for establishment of a dwelling is estimated at $284,077. Total project cost therefore includes the remaining expenditures to plat the subdivision ($320,774 to $352,952) plus residential development on six of the resulting lots ($1,704,462).[4] Total cost estimate: $2,025,236 to $2,057,414. The ratio of expenditures to total project costs is 3.2% to 3.3%; this is not 'substantial progress.' "

(Footnote omitted.) Ultimately, the board determined that the Fischers had a vested right "in platting the subdivision" but that the Fischers "do[ ] not have a vested right in establishing dwellings on the subject property * * *."

After the board issued its decision, the Fischers filed an action in circuit court seeking various forms of relief that were denominated as separate claims.[5] In their first claim, the Fischers sought a review of the board's decision by way of writ of review. *See* ORS 195.318. In their second claim, the Fischers sought a declaration that their Measure 37 waivers "were constitutionally protected, permanent and legally binding contract[s]" under Article I, section 10, of the United States Constitution and Article I, section 21, of the Oregon Constitution.[6] Finally, in their third claim, the Fischers

---

[4] Apparently, there is already an existing farmhouse on what would be the seventh lot.

[5] The Fischers also appealed the board's decision to the Land Use Board of Appeals (LUBA), contending that LUBA had jurisdiction because, "in addition to their Measure 49 vested rights claim," they had asserted before the county that "they had a vested right to approval of the subdivision under ORS 215.427 (the goal-post statute) and ORS 92.040." *Fischer v. Benton County*, 57 Or LUBA 702, 705 (2008). LUBA explained that, although the Fischers had contended that they had a vested right to complete and continue the subdivision pursuant to those statutes, "the county did not make a decision regarding them." *Id.* at 706. Instead, LUBA reasoned that the county's decision concerned only whether, pursuant to Measure 49, the Fischers had a vested right to complete and continue the development that was authorized by their Measure 37 waivers. *Id.* Ultimately, LUBA concluded that, because such a decision is not a land use decision, it lacked jurisdiction. *Id.* at 707. Accordingly, LUBA transferred the case back to the circuit court. *Id.* at 708.

[6] Article I, section 10, of the United States Constitution, provides, in part, that "[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts[.]"

sought mandamus "to compel [the county], its elected officials, officers, agents, and employees to recognize and ratify [their] tentative plat and compel [the county] to continue to process [their] tentative plat in accordance with ORS 215.427(3) and ORS 92.040."[7]

The county moved to dismiss the separately denominated claims for declaratory relief and mandamus on the ground that the circuit court lacked "jurisdiction to review a Measure 49 decision under those two procedural vehicles." The circuit court granted the motion and, in October 2008, entered a limited judgment dismissing those two claims. The Fischers petitioned for reconsideration, which, as noted below, 244 Or App at 173 n 9, the court denied approximately ten months later.

Although the limited judgment was independently appealable when it was entered in October 2008, the Fischers did not timely appeal it.[8] Instead, they proceeded to obtain review of the board's decision by way of their only remaining claim—*viz.*, writ of review.

---

Article I, section 21, of the Oregon Constitution provides, in part, that "[n]o * * * law impairing the obligation of contracts shall ever be passed[.]"

[7] ORS 215.427(3)(a) is commonly known as the "goal-post statute." It provides, in part, that, once an application for a permit, limited land use decision, or a zone change is complete, "approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted." Similarly, with regard to certain subdivisions and partitions, ORS 92.040(1) provides, in part, that

"[a]pproval of the tentative plan shall not constitute final acceptance of the plat of the proposed subdivision or partition for recording. However, approval by a city or county of such tentative plan shall be binding upon the city or county for the purposes of the preparation of the subdivision or partition plat, and the city or county may require only such changes in the subdivision or partition plat as are necessary for compliance with the terms of its approval of the tentative plan for the proposed subdivision or partition."

[8] *See* ORS 18.082(1)(c) (providing that, on entry, a judgment "[m]ay be appealed in the manner provided by law"); ORS 19.255(1) (providing generally that a "notice of appeal must be served and filed within 30 days after the judgment appealed from is entered in the register"); ORS 19.255(2) (providing, in part, that, when a motion for a new trial under ORCP 64 or a motion for judgment notwithstanding the verdict under ORCP 63 is properly served and filed, the notice of appeal must be served and filed within 30 days after the order disposing of the motion is entered or within 30 days after the motion is deemed denied, whichever is first).

With respect to writ of review, the Fischers contended, *inter alia*, that the court needed to determine whether the county "correctly construed the law regarding whether [the Fischers] had made substantial progress in the overall development entitling them to complete the use of the property in compliance with the Measure 37 waivers they received from the State and the County." The Fischers asserted that they had shown "compliance with the *Holmes* ratio test" and that the county "erred in speculating about the cost of the completed project" in evaluating the expenditure ratio. Specifically, the Fischers suggested that the county had speculated that the lots "would only be used for McMansions with a completed project cost estimated to be $2,025,236 to $2,057,414."

In September 2009, the trial court affirmed the county's decision that the Fischers "have a vested right to subdivide their property, but not to establish dwellings on the resulting lots * * *." With regard to the expenditure ratio, the court explained that

"[t]he seven planned lots multiplied by the Board's figure placed the total estimated costs to develop the property [with residential dwellings] at between $2,025,236 and $2,057,414. Therefore, the $66,814 which had already [been] expended by [the Fischers] placed the range of expenditure at between 3.2% and 3.3% of the total cost of development. [The Fischers] argue that the Board's findings are speculative, asserting that under the Board's claim the 'lots would only be used for McMansions.' The expenditure ratio factor clearly weighs in [the county's] favor.

"The Board found that [the Fischers] had made substantial good faith progress in the platting, in preparing the land for the use of platting to subdivide 'as opposed to other uses,' and progress in the actual platting. These findings were only in relation to platting the subdivision because the Board found that neither the expenditures nor the physical process toward establishing dwellings were substantial."

Ultimately, the court concluded that "the Board properly determined that there is a distinction between substantial work done for platting and work done for developing the

property and that [the Fischers] have failed to establish that they had a vested right to establish dwellings on the subject property." The court entered judgment accordingly,[9] and the Fischers appeal.

On appeal, the Fischers raise seven assignments of error, only one of which—*viz.*, the fourth—is dispositive. The gravamen of that assignment is that the Fischers have a vested right to complete and continue the residential sub-division as described in their Measure 37 waivers. In other words, they have a vested right to establish residential dwellings on the lots in the subdivision. Specifically, the Fischers contend that, in determining whether they have a vested right to complete and continue that use, the court erred in including the speculative cost of home construction in the denominator of the expenditure ratio. Instead, they posit that "the only hard evidence in the record based on dwelling types legally permitted in the modern zoning, *i.e.*, without reliance on Measure 37, is the evidence [that they] produced" concerning the cost of placing manufactured dwellings on the lots.

Conversely, the county and the neighbors posit that the *average* cost to develop a dwelling on each lot was properly included in the total project cost for purposes of the expenditure ratio. Specifically, the neighbors assert that, because "[t]he common law allows the decision maker to con-sider a range of possible total project costs," the county prop-erly "considered a cost that was the average of the total costs of constructing six homes in Benton County" rather than the costs associated with the "newly created project that [the Fischers] presented as a way to rationalize a finding of vested rights."[10]

---

[9] Further, in this judgment, the court denied the Fischers' petition for recon-sideration of the limited judgment that dismissed the claims for declaratory relief and mandamus. *See* 244 Or App at 171.

[10] The neighbors also raise an alternative basis on which to affirm that part of the circuit court's determination that the Fischers do not have a vested right to establish dwellings on their property. Specifically, they contend that the Fischers had not initiated the construction of dwellings after the issuance of building per-mits. We have previously rejected that contention in *Friends of Yamhill County*, 237 Or App at 165-68.

In addition, the neighbors raise a cross-assignment of error seeking to reverse that part of the circuit court's determination that the Fischers have a vested right

We have addressed contentions concerning the ratio factor that are similar to those raised by the parties in this case. As we explained in *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 65, 246 P3d 56 (2010), "a landowner's proof of 'substantial expenditures' is the *sine qua non* of a vesting determination." Further, we noted that that determination "requires an examination of both the absolute amount expended and the percentage yielded by the expenditure ratio." *Id.* at 66. Significantly, in *Kleikamp*, we explained that "a cogent assessment of total project cost (and, concomitantly, the expenditure ratio) will, in turn, require particular identification of the development that the property owner sought to vest as of December 6, 2007" and that "property owners must demonstrate 'the *likely costs* of completing the particular development sought to be vested *based on construction costs as of December 6, 2007.*' " *Id.* (quoting *Friends of Yamhill County*, 237 Or App at 178) (emphasis in *Kleikamp*).

Such an assessment of total project cost (and concomitantly, the expenditure ratio) is necessarily predicated on a proper assessment of the "use" that is described in the waiver—that is, the "use" that the landowner seeks to vest under section 5(3) of Measure 49. In *Friends of Yamhill County*, where the claimant had obtained waivers to subdivide his property and construct residences, we reasoned that, for purposes of section 5(3) "use" refers to "the actual employment of land for a residential purpose." 237 Or App at 167. Stated differently, in a case such as this in which a claimant has obtained Measure 37 waivers to subdivide property and construct residential dwellings on the resulting lots, the pertinent "use" is not simply the subdivision of the property. Instead, under those circumstances, the "use" for purposes of determining the total project cost is the subdivision of the property *and* the establishment of residences on the resulting lots. *Id.*

---

to subdivide their property. That cross-assignment is procedurally improper because it seeks qualitatively different relief than that afforded by the court. *See* ORAP 5.57(2) (providing, in part, that a cross-assignment of error is procedurally proper "[i]f, by challenging the trial court ruling, the respondent does not seek to reverse or modify the judgment on appeal"). Accordingly, we do not address the neighbors' cross-assignment further.

In light of those principles, we conclude that the circuit court "should have remanded for the county to determine the extent and general cost of the project to be vested and to give proper weight to the expenditure ratio factor in the totality of the circumstances of this case." *Friends of Yamhill County*, 237 Or App at 178. Here, the county's and reviewing court's treatments of the expenditure ratio were predicated on two legal errors. First, the reviewing court sustained the county's determination that the Fischers had a vested right to subdivide the property but not to establish dwellings. That determination was necessarily predicated on the county's failure to properly assess the total project cost for purposes of the expenditure ratio in relation to the pertinent "use" that the Fischers sought to vest—that is, the subdivision of the property *and* the establishment of residences. Second, by relying on regional housing construction costs, the county failed to cogently assess the total project cost of the "particular development" that the Fischers sought to vest as of December 6, 2007, based on construction costs as of that date. Those legal errors require reversal.

The Fischers' other assignments of error require little discussion. In their first and third assignments of error respectively, the Fischers contend that the court erred in failing to conclude that they had a binding contract with the county to develop their property and that the court erred in determining that it lacked jurisdiction to consider the claims for declaratory relief and mandamus. Those assignments of error, however, concern the claims for declaratory relief and mandamus that were resolved in the October 2008 limited judgment. Because the Fischers did not appeal that judgment, *see* 244 Or App at 171, the first and third assignments of error are unreviewable. Accordingly, we do not consider them further.

In their remaining assignments of error, the Fischers contend that (1) Measure 49 cannot be retroactively applied, (2) the deprivation of the right to establish dwellings was an unconstitutional taking of their property, and (3) they had a vested right to establish dwellings pursuant to various statutes. We and the Supreme Court have previously rejected

the fundamental underpinnings of those assignments.[11] Accordingly, we do not address them further.

Reversed and remanded.

---

[11] *See Corey v. DLCD*, 344 Or 457, 466-67, 184 P3d 1109 (2008) ("In the end, we hold only that plaintiffs' contention that Measure 49 does not affect the rights of persons who already have obtained Measure 37 waivers is incorrect. In fact, Measure 49 by its terms deprives Measure 37 waivers—and *all* orders disposing of Measure 37 claims—of any continuing viability, with a single exception [(*viz.*, the 'vested rights' exception under section 5(3) of Measure 49)] that does not apply to plaintiffs' claim." (Emphasis in original.)); *Damman v. Board of Commissioners of Yamhill County*, 241 Or App 321, 331-32, 250 P3d 933 (2011) ("Measure 49 precludes prospective residential development allowed by waivers granted under Measure 37. Moreover, it is not clear that subdivision lot approval by the county carries with it any vested right to develop the lots for a particular use or at any specific density of development. Because the [claimants'] Measure 37 waivers no longer are effective, current zoning and the residential use allowances under Measure 49 control residential development and building permits for the subdivision."); *Curry v. Clackamas County*, 240 Or App 531, 538, 248 P3d 1 (2011) (rejecting the plaintiffs' contention that "they have a constitutionally protected vested right in the Measure 37 waivers themselves, because those waivers are equivalent to final judgments"); *Bruner v. Josephine County*, 240 Or App 276, 282 n 7, 246 P3d 46 (2010) ("The legal effect of Measure 49 on the Measure 37 waiver, a zoning permit to develop the property, is not assessed under regulatory takings principles. Whether zoning permissions have ripened to a degree sufficient to immunize the use from regulatory controls is tested by the 'common law vested right' doctrine referenced in section 5(3) of Measure 49."); *Pete's Mountain Homeowners Assn. v. Clackamas Cty.*, 227 Or App 140, 143, 204 P3d 802, *rev den*, 346 Or 589 (2009) ("[T]he goal-post statute encompasses Measure 37 waivers. Measure 49, however, still has superseding effect, rendering the goal-post statute inoperable as to applications based on Measure 37 waivers.").